IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BELFOREST WATER SYSTEM,<br>an Alabama mutual benefit corporation, | ) <br>) <br>) | |
| Plaintiff, | ) <br>) | |
| v. | ) <br>) | CASE NO. 2026-CV-00254 |
| The CITY OF DAPHNE,<br>an Alabama municipal corporation;<br>the UTILITIES BOARD OF<br>THE CITY OF DAPHNE, a public<br>utilities corporation; the INDUSTRIAL<br>DEVELOPMENT BOARD OF THE<br>CITY OF DAPHNE; an Alabama<br>public corporation; and<br>68 VENTURES, LLC, an Alabama<br>limited liability company; | ) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) <br>) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Belforest Water System ("BWS") sues The City of Daphne ("City") under 42 U.S.C. §1983 and 28 U.S.C. §§2201 and 2022 for declaratory judgment that the adoption of a franchise ordinance regulating and imposing fees and costs upon the provision of the water services by BWS utilizing City Rights-of-Way would violate the provisions of 7 U.S.C. §1926(b). Plaintiff sues the Utilities Board of the City of Daphne ("DU") under the same federal statutes for declaratory judgment that DU's provision of water service to a portion of BWS' service territory while BWS is indebted to the federal government violates the provisions of both 7 U.S.C. §1926(b) and Ala. Code §11-50-1.1 (1975). It asserts a claim against the Industrial Development Board of the City of Daphne ("IDB") for that entity's breach of a Water Services Agreement with BWS. Finally, it sues the City, the IDB and 68 Ventures, LLC ("68 Ventures") for their conspiracy to

*Page 1 of 21*

accomplish the unlawful curtailment of the water services of Belforest in its existing service territory and the duplication of BWS' services by DU in violation of Ala. Code §11-50-1.1 (1975).

## PARTIES

1.     Plaintiff Belforest Water System is an Alabama mutual benefit corporation incorporated under the provisions of Ala. Code §§10A-20-9.01 through 10A-20-9.05 (1975) (formerly Ala. Code §§10A-20-190 through 10A-20-194, amended and renumbered by Act 2009-513). It owns, operates, and maintains a water distribution system serving its members in the Belforest community and surrounding areas all within a defined service territory both within and without the municipal limits of the City of Daphne. It is an "association" within the meaning of 7 U.S.C. §1926(b).

2.     Defendant the City of Daphne is a municipal corporation organized and existing under the laws of the State of Alabama, with the capacity to sue and be sued pursuant to Ala. Code §11-40-1 (1975), *et seq.*

3.     Defendant Industrial Development Board of the City of Daphne is an Alabama public corporation duly incorporated under the provisions of Ala. Code §§11-54-80 through 11-54-135(1975), with its principal place of business in Baldwin County, Alabama.

4.     Defendant Utilities Board of the City of Daphne is a municipal utilities board organized as an Alabama public corporation to operate municipal utility systems and is incorporated under the provisions of Ala. Code §§ 11-50-310 (1975), *et seq.*

5.     Defendant 68 Ventures, LLC, is an Alabama limited liability company with its principal place of business in Baldwin County, Alabama.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 based on

federal question of claims brought under 42 U.S.C. §1983 and the Federal Declaratory Judgment Act, 28 U.S.C. §§2201 and 2202, regarding those rights afforded BWS by 7 U.S.C. §1926(b). This Court has Supplemental Jurisdiction of the state law claims against the IDB, the City and 68 Ventures pursuant to 28 U.S.C. §1367.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) and (2) because all defendants reside in this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTS

8.      Plaintiff and Defendant DU have previously engaged in litigation related to DU's curtailment and duplication of BWS' services by its usurpation of customers within BWS' service territory. Among other actions, in July 1999, BWS filed suit against DU in the Circuit Court of Baldwin County in a case styled *Belforest Water System, an Alabama mutual benefit corporation, v. The Utilities Board of the City of Daphne, a public utilities corporation, and Arthur Prater, Bob Kehr, Sam Woodham, Byron Krogen and John Lake, in their official capacities as members of The Utilities Board of the City of Daphne*, Case No. 05-CV-1999-000663 to recover, *inter alia*, for the actions of DU in duplicating its services and usurping and converting certain of its customers.

9.      In November 2002 the litigation between BWS and DU, *et al.,* settled. A settlement agreement between the parties was adopted by the Circuit Court as its Order on December 10, 2002 ("2002 Settlement Agreement"). A true and correct copy of the Court's Order with its attached Settlement Agreement and map exhibit is attached hereto and made a part thereof as Exhibit 1.

10.     Paragraph 1 of the Settlement Agreement provides:

1.    The parties agree that the line dividing the respective service territories of the parties is shown on the map attached hereto as Exhibit A and is agreed as the dividing line between their respective service territories.  The parties agree to respect the territory of the other agreed upon herein and agree not to serve customers in the other's service territory without the prior written consent of the other.  If any party declines to serve a customer within an area proximate to the boundary line between the two service areas, then the other party may serve the customer upon receiving written notice of the declination to serve from the other party.

Ex. 1, p. 3.

11.    In 2016, the IDB acquired certain parcels of real estate situated in BWS' service territory between Daphne High School and U.S. Highway 181 by Warranty Deed recorded at Instrument No. 1591220 in the records of the Office of the Judge of Probate of Baldwin County, Alabama. The IDB planned a project to develop the property into the Daphne Innovation and Science Complex ("DISC").

12.    On or about May 11, 2016, Dane Haygood, the Mayor of the City of Daphne at that time, advised Rudd Shultz, then president of the board of BWS, that it had come to his attention that the DISC project was located in an area to be served by BWS according to a territorial agreement between BWS and DU. He advised that that agreement "appears to preclude the City's Utility Board from serving the DISC project with water services". He expressed the City's "strong desire that it be served by our own utility system". He concluded his letter with a request that BWS modify the water territory agreement with DU to allow it to serve the DISC project with potable water.

13.    On or about May 25, 2016, BWS refused "to hand over this property within [its] territory. BWS is more than capable of providing water to DISC project".

14. Thereafter, to facilitate the development of the property, the IDB and BWS entered into a Water Service Agreement ("WSA") with an effective date of August 28, 2016. A true and correct copy of the WSA is attached hereto and incorporated herein by reference as Exhibit 2.

15. By Paragraph 1 of the WSA, BWS "agrees to furnish to the IDB at the point of delivery hereafter specified, during the term of this contract or any renewal or extension thereof, potable water meeting applicable purity standards of and per the requirements of the Alabama Department of Environmental Management".

16. By Paragraph 2 of the WSA, BWS "agrees to furnish the aforementioned potable treated water at a reasonably constant pressure from an existing twelve (12) inch main supply at a point located within the right-of-way of Alabama Highway 181 or within three (3) feet of the property line between the Property and the right-of-way of Alabama Highway 181".

17. Specifically anticipating the future development of the property and future requirements for increased volume and pressure of water, the WSA contained the following provision: "If greater pressure than that normally available at the point of delivery is required by the IDB the costs of providing such greater pressure shall be borne by the IDB".

18. By paragraph 11, the parties agreed "the initial term of this agreement shall be approximately ten (10) years beginning on the date of its execution by both parties.

19. On or about April 9, 2018, the IDB and BWS entered into a "Water Line Construction and Reimbursement Agreement by and Between the Industrial Development Board of the City of Daphne and Belforest Water System" to provide for the construction of water lines and reimbursement for the same to provide the agreed potable water service to the property. One of the recitals of the contract provided that "Daphne IDB believes that the Project will reduce operating expenses, enhance the capability of the water system, and provide additional capacity

for future growth and development of the DISC project".

20.     Thereafter, as provided by this contract, the IDB designed and oversaw the installation of a ten (10) inch water main line and related appurtenances within the right-of-way ("ROW") of the City from BWS' existing, active twelve-inch (12in) water distribution main line, which is also within the City's ROW along the west side of State Highway 181 to the newly proposed Innovation Way on the DISC property. The IDB further installed service lines and built streets with curbs and gutters and installed fire hydrants in the City's ROW throughout the property and connected these water lines to BWS' system to facilitate the provision of water service to the property.

21.     On or about May 23, 2018, the City adopted Resolution 2018-24 by which it loaned one million two hundred thousand dollars ($1,200,000.00) to the IDB for unspecified purposes related to the DISC project. Following a three-year forbearance period, the IDB was to make monthly payments to the City to repay the loan "equaling fifty percent (50%) of the net revenue received during the previous month from the sale of any DISC properties". On information and belief, a balance on the loan remains outstanding.

22.     In September 2018, a USDA Rural Development loan of $2,300,000 was approved for BWS. A true and correct copy of the letter of approval with its attached USDA Form RD 1940-1 evidencing the obligation of funds is attached hereto and made a part hereof as Exhibit 3. This loan was incurred to acquire and build infrastructure necessary to provide water to the members of the system to carry out the purposes for which BWS was organized. This obligation of federal funds allowed BWS to obtain private financing from Trustmark Bank to acquire new facilities and construct new infrastructure in its territory.

23.     On or About April 30, 2019, the IDB took title to an additional parcel of real estate

adjacent to the DISC site and within BWS' service territory by Warranty Deed recorded at Instrument No. 1757589 in the records of the Office of the Judge of Probate of Baldwin County, Alabama.

24.     On or about October 28, 2021, the City took title to a parcel of real estate adjacent to the DISC site and within BWS' service territory by Warranty Deed recorded at Instrument No. 1954536 in the records of the Office of the Judge of Probate of Baldwin County, Alabama.

25.     On or about April 20, 2023, BWS replaced existing Trustmark indebtedness and became obligated on a promissory note "to pay to the order of the United States of America, acting through the Rural Housing Service, Rural Business-Cooperative Service, or Rural Utilities Service within the Rural Development Mission Area, the Farm Service Agency, or their successor Agencies, United States Department of Agriculture, (herein called the "Government")" in the amount of Two Million Three Hundred Thousand & 00/100 $2,300,000 at an annual interest rate of 3.75% ("Note"). The principle and interest are required by the terms of the Note to be paid in installments of $111,918.00 on or before the 20th of April each year for forty years from the date of the Note. A true and correct copy of the Note is attached hereto and made a part hereof by reference as Exhibit 4.

26.     To further secure its obligations under the Note, BWS provided a United States Department of Agriculture Rural Development Security Agreement to the Government. By that agreement, BWS granted to USDARD a security interest in "[a]ll of the revenues, fees, rates, dues, assessments, all income from whatever source derived, other choses of action of whatever nature and service charges in connection with the operation of the facilities of [BWS]". A copy of the Security Agreement is attached hereto and made a part hereof by reference as Exhibit 5.

27.     On information and belief, towards the end of 2023, the City, the IDB, and 68

Ventures began negotiations leading to the adoption of a Purchase and Sale Agreement ("PSA") for the DISC project property and the other after acquired parcels owned by the IDB and the City.

28.    68 Ventures seeks to acquire the property to construct a very large, multi-phase, multi-use project called "Prospect Park". The concept plan for the site include the preservation of the corporate office component referenced in the WSA and the addition of single-family attached townhomes, multifamily, retail space, commercial space and hospitality space through seven (7) separate phases of development. The final phase was not projected to start until "Q3 2031" and was to contain "135 DU (150 beds)".

29.    On information and belief, the City, IDB and 68 Ventures desired to obtain potable water service from DU rather than from BWS, but this desire was frustrated by the existence of the 2002 Settlement Agreement and the provisions of both 7 U.S.C. §1926(b) and Ala. Code §11-50-1.1 (1975). Defendants, City, IDB and 68 Ventures, entered into a common scheme, combination and conspiracy to unlawfully curtail the services of BWS in its service territory and facilitate the duplication of BWS' water service by DU. The conspiring Defendants sought to induce BWS to decline to serve the territory in writing and to consent to service by Daphne Utilities in writing as is required by the 2002 Settlement Agreement by the representation of the need for a remarkably large volume of water requiring increased pressure for the entire development through all its phases and by the imposition of new fees and costs upon BWS through the adoption by City of a franchise ordinance. The plan would also have the effect of relieving the IDB of compliance with its contractual obligation to pay the costs of BWS' provision of water at required increased pressure because, theoretically, BWS would decline to serve the PSA Property (defined below); consent to service by DU and would not incur costs to comply with its obligation under the WSA.

30.    On or about December 18, 2023, BWS' board voted to combine its existing

connection and impact fees and to increase those fees effective January 1, 2024. This more than doubled the amount of the impact/connection fee required to be paid by 68 Ventures in connection with its development of the Prospect Park project.

31.     On or about January 11, 2024, the City provided BWS with a draft franchise "Ordinance granting non-exclusive authorization to [BWS] for the purpose of constructing and maintaining a water distribution system within certain public rights-of-way within the City of Daphne, Alabama" and requested BWS agree to its terms. A true and correct copy of the transmittal email with its attached draft Franchise Ordinance agreement is attached hereto and made a part hereof by reference as Exhibit 6. The proposed Franchise Ordinance agreement generally precluded BWS from installing any new facilities or water distribution infrastructure within the City's ROW without a permit from the City. The proposed Franchise Ordinance generally requires BWS to pay a one-time license fee and continuing franchise fees based on a percentage of the gross revenue received by BWS from the sale of water to customers using BWS distribution system installed in the City's ROW.

32.     BWS objected to the City's adoption of the proposed ordinance as a violation of 7 U.S.C. 1926(b) and began negotiation with the City in an attempt to reach agreement on acceptable terms of a franchise ordinance agreement.

33.     On or about May 22, 2024, the IDB and the City—as Sellers—and 68 Ventures, LLC, – as Buyers – entered into a Purchase and Sale Agreement ("PSA") whereby 68 Ventures agreed to buy the property comprising the DISC site and the adjacent parcels from the IDB and the City ("PSA Property") subject to certain conditions. A true and correct copy of the Purchase and Sale Agreement is attached hereto and made part of hereof by reference as Exhibit 7.

34.     Paragraph 3 of the PSA allows 68 Ventures and its agents to conduct such

investigations and undertake such activities as it deems necessary to ensure that the Property is, in its sole discretion, fit for 68 Ventures' anticipated development ("Due Diligence Activities"), including accessing the property and testing to ascertain the availability of potable water service to the project at sufficient pressure while protecting the IDB and the City—as Sellers—should 68 Ventures' Due Diligence Activities result in any claims against IDB or the City by third parties. Paragraph 3 of the PSA further requires 68V to "indemnify, defend and hold Seller harmless from and against any claims, damages or liability (including reasonable attorneys' fees)… resulting from or relating to" any of 68 Ventures' Due Diligence Activities. Ex. 7, p. 3.

35.     The contract also required Seller to furnish 68 Ventures with "copies of all service contracts… relating to the Property to which Seller is a party." Ex. 7, p. 3. The WSA is a service contract relating to the Property to which IDB is a party.

36.     On information and belief, 68 Ventures retained JADE Consulting, LLC ("JADE") to perform professional services on its behalf and act as its agent in conducting its due diligence activities.

37.     In June 2024, JADE, on behalf of 68 Ventures, initiated contact with BWS to schedule pressure testing of its water service existing on the PSA Property.

38.     Defendants, on information and belief, planned to communicate such a large water volume and pressure demand requirement to immediately serve the entirety of the potential seven (7) phase development that BWS would decline, in writing, to provide service to the property and would consent, in writing, to DU's provision of service to the property as required by the 2002 Settlement Agreement. In fact, on or about June 26, 2024, JADE employees were advised that "the Mayor said once [BWS] says they won't serve us then Daphne will…"

39.     Both the Mayor and City Councilman Joel Coleman, serve as members of DU.

Coleman is also a member of the IDB and is the City Council Liaison to that entity. The Chairman of the IDB, H.R. Harvey, is also an employee of 68 Ventures and serves as a Strategic Advisor for its executive team.

40. JADE finished its testing in early July 2024 and found the pressure readings "unsatisfactory".

41. On July 10, 2024, Macy Pucket, an employee of JADE, with knowledge that the flow test yielded unsatisfactory results, requested a Will Serve Letter or Letter of Service Availability for the "DISC - Prospect Park" property from BWS.

42. In response, on or about July 17, 2024, BWS employees requested a meeting with JADE to "discuss the project in more detail" and to "start a discussion of what new infrastructure may be required to adequately serve [DISC – Prospect Park]". The BWS employee advised, "[u]ntil we do that, we don't feel we are in a position to pledge service availability to something of this size and scope".

43. JADE employees were told to attend this meeting but to "have very little feedback".

44. On August 6, 2024, a JADE employee was asked to create a PDF of the July 17, 2024, BWS email to give to "the [C]ity as the line 'we don't feel we are in a position to pledge service availability to something of this size and scope' is key…"

45. That same day, another JADE employee, Paul Marcinko, emailed JADE's Principal Engineer and Managing Member, Trey Jinright, and asked for instructions on the best way to achieve a declination from BWS satisfactory to DU. The email reads:

> Trey – Since Corley has already had the meeting with us and stated below that they "don't feel [they] are in a position to pledge service availability to something of this size and scope do you think the attached email might be all Troy needs?
> Alternatively if you don't think the attached will work then I think the request for the will serve should come from Macy on this email chain below. In which case I can draft a response for Macy to send to double down on our request.

46.     On information and belief, the Troy reference in that email is Troy Strunk, the Executive Director of the Community Development/Planning and Zoning Department of the City of Daphne who works closely with the Mayor to achieve the City's development objectives.

47.     Thereafter, JADE made multiple requests for a Will Serve Letter in furtherance of the effort to obtain written declination of service from BWS.

48.     BWS continued to request calculations and estimates of potential water demands along with an anticipated project schedule of development to accurately plan for the acquisition of new infrastructure to provide the increased pressure necessary to serve the project.

49.     On October 11, 2024, JADE, as an agent of 68 Ventures, submitted to BWS a "Peak Water Demand" regarding the development and reiterated its request for a Will-Serve Letter from BWS for the represented immediate water demand requirement of the entire projected seven (7) phase development.

50.     On or About February 24, 2025, for the first time, 68 Ventures submitted a phased site plan for the entire development to BWS. It revealed, among other things, that the final phase was not scheduled to begin until "Q3 2031".

51.     On or about April 30, 2025, BWS offered to resolve the Franchise Ordinance agreement controversy by providing to the City a substantially modified franchise ordinance agreement and proposing its adoption by the City Council. The City failed to take action with respect to BWS' offer.

52.     On or about October 21, 2025, 68 Ventures, the City and IDB filed a complaint in the Circuit Court of Baldwin County styled *City of Daphne, an Alabama municipal corporation; Industrial Development Board of the City of Daphne, an Alabama public corporation; and 68 Ventures, LLC, an Alabama limited liability company v. Belforest Water System, an Alabama*

*mutual benefit corporation, and Charles Dube, Patrick Heiter, Michael Metz, Don Joffe, and Anthony Pierce, in their official capacities as members of the board of directors of Belforest Water System* Case No. 05-CV-2025-901652 ("Complaint"). This lawsuit ("State Court Lawsuit") asserted only two counts seeking declaratory judgment related to the 2002 Settlement Agreement between BWS and DU. DU is not a party to the State Court Lawsuit.

53.     By paragraph 10 of the Complaint, 68 Ventures, the City and IDB admit that the Prospect Park development property lies in BWS' service territory.

54.     By paragraphs 12 and 15, 68 Ventures, the City and IDB allege that "DU has capacity and infrastructure necessary to serve the project immediately" and "DU stands ready to and able to serve the subject property…"

55.     By paragraph 41 of the Complaint, 68 Ventures, the City and IDB represent "[n]o claim or cause of action under federal law is asserted or intended and [they] expressly disclaim any reliance on federal antitrust or other federal statutory provisions".

56.     By the Prayer for Relief, among other things, 68 Ventures, the City and IDB requested from the circuit court "a declaration that DU is authorized to serve the subject property".

57.     On or about February 6, 2026 all plaintiffs in the State Court Lawsuit filed a Motion for Partial Summary Judgment on both of their claims for declaratory judgment.

58.     Scott Polk, the Chief Executive Officer and General Manager of DU executed an Affidavit filed in connection with the Motion for Partial Summary Judgment. By that affidavit Mr. Polk testified on behalf of DU that:

> 7. DU is ready, willing, and able to provide water service to Prospect Park immediately upon receiving written notice that Belforest Water System has declined to serve the property, as contemplated by the 2002 Settlement Agreement between DU and Belforest Water System.

8. DU has not received written notice from Belforest Water System stating that it has declined to serve Prospect Park.

9. Absent such written notice, DU has not provided service to Prospect Park solely because of the territorial provisions of the Settlement Agreement.

59. On May 21, 2026, the circuit court granted that Motion for Partial Summary Judgment. The order provides:

MOTION FOR PARTIAL SUMMARY JUDGMENT on DECLARATORY COUNTS I and II PURSUANT TO RULE 56 filed by CITY OF DAPHNE and INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF DAPHNE is hereby GRANTED.

If Plaintiffs request a more detailed ORDER, they have SEVEN (7) DAYS to submit PROPOSED ORDER to the COURT.

60. On May 21, 2026, BWS filed a Notice of Appeal.

61. On May 28, 2026, in response to the circuit court's invitation, 68 Ventures, the City and IDB submitted a "more detailed" proposed order that provided in pertinent part:

6. The Court further declares that the Settlement Agreement does not prohibit DU from providing water service to the Subject Property and the Prospect Park Project following BWS's declination of service, and DU is hereby authorized to provide water service to the Subject Property and the Prospect Park Project.

62. On June 19, 2026, BWS demanded IDB perform according to the WSA and sought assurances from IDB that future costs of BWS' performance will be borne by the IDB as represented and agreed. Said costs have not been paid and no assurances have been provided.

63. On or about Monday June 22, 2026, BWS' board voted to withdraw its offer to agree to the terms of a Franchise Ordinance. The withdrawal of the offer was communicated to the City by letter of BWS' counsel dated June 23, 2026. A true and correct copy of this letter is attached hereto as Exhibit 8.

64. On information and belief, the City continues to desire to enact a Franchise Ordinance and impose operating costs and restrictions and permitting and franchise fees upon

BWS in violation of 7 U.S.C. §1926(b). As counsel for the City advised counsel for BWS during the negotiations relating to the terms of the ordinance agreement, "we [the City] are open to reviewing any offers [BWS] is willing to make… including the prospect of a "fresh start" moving forward but keeping the status quo is not an option".

**COUNT I**
**DECLARATORY JUDGMENT**
**Violation of 7 U.S.C. §1926(b)**
**The City of Daphne**

65.     BWS incorporates by reference the allegations of paragraphs 1 through 11, 14 through 20, 22 through 26, 31, 32 51 through 55 and 53 above, as if fully set forth herein.

66.     An actual controversy which is definite and concrete exists between BWS and the City touching the legal relations of the parties with respect to the legal effect of the proposed franchise ordinance as curtailment of the services of BWS within its service territory while it is obligated on a loan from the federal government in violation of 7 U.S.C. §1926(b). This actual controversy between the parties cannot be resolved absent declaratory relief by this court, conclusively establishing whether the City may adopt the proposed ordinance or, in fact, imposing any franchise requirement and associated fees and costs upon BWS while it is indebted on a government loan.

67.     The City of Daphne, a public governmental entity, through its imminent imposition of a Franchise Ordinance upon BWS requiring it to obtain permits to install and operate water lines in the rights-of-way of the City of Daphne, and to pay fees associated with their use would curtail or limit the service and supply of water to customers and areas historically served by BWS in violation of 7 U.S.C. §1926(b) and would deprive BWS of its legal rights afforded by 42 U.S.C. §1983.

68.     The adoption of the ordinance violates 7 U.S.C. §1926(b)'s intended purposes of

protecting rural water associations from encroachment by competition, the encouragement of rural water development, and the provision of greater security for repayment of loans provided by or guaranteed by USDARD. The threatened franchise ordinance will affect BWS' ability to repay its indebtedness to USDARD. Accordingly, BWS is entitled to the rights, privileges, and protections granted by 7 U.S.C. §1926(b).

WHEREFORE, Belforest Water System prays this Court enter Judgment in its favor and against the City of Daphne including entering declaratory judgment in favor of BWS pursuant to 28 U.S.C. §§2201 and 2202 as follows:

a. BWS is an "association" within the meaning of 7 U.S.C. §1926(b); is currently indebted to USDARD, and provides water service and has made water service available to a service territory that includes the entirety of the Prospect Park development site through infrastructure within the Rights-of-Way of the City of Daphne;

b. The City of Daphne, by adopting the ordinance as proposed, will unlawfully curtail or limit BWS' service in violation of 7 U.S.C. §1926(b);

c. BWS is entitled to the rights, privileges, and protections granted it under 7 U.S.C. §1926(b) throughout the remainder of the term of its USDARD indebtedness;

d. Permanently enjoining the City of Daphne from adopting a franchise ordinance regulating BWS' use of the Rights-of-Way of the City to provide water service to BWS' members and the territory of BWS during the term of its USDARD loan;

e. Awarding to BWS, pursuant to 42 U.S.C. §1988(b), its costs and reasonable attorney fees expended in preventing the City from wrongfully and illegally interfering with BWS' rights under 42 U.S.C. §1983 and 7 U.S.C. §1926(b); and,

f.   Granting such other and further relief as the court deems just and proper.

**COUNT II**
**DECLARATORY JUDGMENT**
**Violation of 7 U.S.C. §1926(b)**
**Daphne Utilities**

69.    BWS incorporates by reference the allegations of paragraphs 1 through 11, 14 through 20, 22 through 26 and 52 through 61 above, as if fully set forth herein.

70.    An actual controversy which is definite and concrete exists between BWS and DU touching the legal relations of the parties and relating to the right of DU to provide water services to the Prospect Park project without violating the provision of 7 U.S.C. §1926(b) and Ala. Code §11-50-1.1 (1975). This actual controversy cannot be resolved absent declaratory relief by this court, namely declaring whether DU may provide water services to the Prospect Park project without violating U.S.C. §1926(b) and Ala. Code §11-50-1.1 (1975) given the circuit court's order authorizing DU to provide service.

71.    The Utilities Board of the City of Daphne, a public entity, by providing water service to customers within BWS established service territory during the term of its federal government loan curtails the services of BWS to existing and potential customers within its protectable service territory and violates 7 U.S.C. §1926(b); duplicates the services of BWS in violation of Ala. Code §11-50-1.1 (1975) and deprives BWS of its legal rights afforded by 42 U.S.C. §1983.

72.    DU's service to BWS' service territory violates 7 U.S.C. §1926(b)'s intended purposes of protecting rural water associations from encroachment by competition, the encouragement of rural water development, and the provision of greater security for repayment of loans provided by the federal government. The service and duplication will affect BWS' ability to repay its indebtedness to government. Accordingly, BWS is entitled to the rights, privileges, and

protections granted by 7 U.S.C. §1926(b) and Ala. Code §11-50-1.1 (1975).

WHEREFORE, Belforest Water System prays this Court enter Judgment in its favor and against the Utilities Board of the City of Daphne including entering declaratory judgment in favor of BWS pursuant to 28 U.S.C. §§2201 and 2202 as follows:

a.  BWS is an "association" within the meaning of 7 U.S.C. §1926(b); is currently indebted to the federal government, and has made water service available to a service territory that includes the entirety of the Prospect Park development site;

b.  BWS is entitled to the rights, privileges, and protections granted it under 7 U.S.C. §1926(b) throughout the remainder of the term of its federal government indebtedness;

c.  The Utilities Board of the City of Daphne, by serving the property with water, will unlawfully curtail or limit BWS' service in violation of 7 U.S.C. §1926(b);

d.  The Utilities Board of the City of Daphne, by serving the property with water, will unlawfully duplicate BWS' service in violation of Ala. Code §11-50-1.1 (1975);

e.  Permanently enjoining The Utilities Board of the City of Daphne from serving the Prospect Park property with water during the term of BWS' federal government loan;

f.  Awarding to BWS, pursuant to 42 U.S.C. §1988(b), its costs and reasonable attorney fees expended in preventing the City from wrongfully and illegally interfering with BWS' rights under 42 U.S.C. §1983 and 7 U.S.C. §1926(b); and,

g.  Granting such other and further relief as the court deems just and proper.

**COUNT III**
**BREACH OF CONTRACT**
**The Industrial Development Board of the City of Daphne**

73.    BWS incorporates by reference the allegations of paragraphs 1 through 7, 11 through 18, 33 through 37, 40 through 42, 48 through 50 and 61 above, as if fully set forth herein.

74.    BWS has performed and is in the process of performing its obligations under the WSA. BWS has paid over $600,000.00 to date to provide the greater pressure, which said costs the IDB has agreed to bear pursuant to paragraph 2 of the WSA.

75.    In response to the multiple requests for a will serve letter agreeing to provide water volumes at the pressure required by the DISC – Prospect Park development project and in order to provide the pressure called for by 68 Ventures' agents' Water Pressure Demand, and in reliance upon the IDB's representation in the WSA that it would bear the costs of providing greater pressure, BWS began to incur costs and expenses to provide the greater pressure as contemplated by and agreed in the WSA. Among other things, BWS retained the professional services of engineering and financial consulting firms to advise of new infrastructure necessary and necessary adjustments to its rate and fee structure to recover the costs of the new infrastructure while servicing the federal government debt and acquired additional infrastructure.

76.    BWS acquired rights in real property necessary for the construction of a one-million-gallon elevated water tank site to facilitate service to the property at greater pressure at cost of $165,000.00.

77.    BWS will award a contract for construction of the elevated storage tank to facilitate service to the property at greater pressure to Caldwell Tanks, Inc. in the sum of $6,940,600.00.

78.    IDB has breached the contract by not bearing the costs to provide the greater pressure required for the development as agreed to in the WSA and has repudiated its agreement with BWS, such that BWS is entitled to damages for total breach.

79.    BWS has been damaged by IDB's breach of the WSA.

WHEREFORE BWS prays that this Honorable Court will enter judgment in its favor and against the IDB for damages in an amount to be proven at trial including interest, costs and all other just, general and equitable relief.

## COUNT IV
## Conspiracy

80.    BWS incorporates by reference the allegations of paragraphs 1 through 13, 21, 23, 24, and 27 through 61 above, as if fully set forth herein.

81.    Defendants (the City, IDB and 68 Ventures) have conspired with each other to curtail BWS' ability to serve its admitted service territory comprising the Prospect Park project. They have conspired and taken concerted action to facilitate and enable DU's duplication of BWS services to the Prospect Park project territory in violation of Alabama law.

82.    Plaintiff has been injured as a proximate result of the conspiracy.

WHEREFORE, Belforest Water System prays this Court enter Judgment in its favor and against the Defendants including for declaratory judgment that they have engaged in conspiracy to curtail BWS' services and provide for the unlawful duplication of BWS' water services by DU and for damages as awarded by the court including compensatory damages, special damages, punitive damages, costs, interest and attorney fees and all other just, general and equitable relief.

Respectfully submitted this 14h day of July, 2026.

/s/ George R. Irvine, III
GEORGE R. IRVINE, III  (IRV001)
FINLEY R. REEVES  (REE079)
Attorneys for Belforest Water System

STONE CROSBY, P.C.
        8820 U.S. Highway 90
        Daphne, Alabama 36526

(P) 251-626-6696
(F) 251-626-2617
girvine@stonecrosby.com
freeves@stonecrosby.com


**To the Clerk:**

      **Defendant the City of Daphne is to be served via certified mail at:**

      **City of Daphne**
      **c/o Cindy Beaudreau, City Clerk**
      **Daphne City Hall**
      **1705 Main Street**
      **Daphne, AL 36526**

      **Defendant the Industrial Development Board of the City of Daphne is to be served via process server at:**

      **The Industrial Development Board of the City of Daphne**
      **c/o Herschel Robert Harvey, Chairman**
      **501 Village Circle**
      **Daphne, Alabama 36526**

      **Defendant the Utilities Board of the City of Daphne is to be served via process server at:**

      **The Utilities Board of the City of Daphne**
      **c/o Scott Polk, General Manager and CEO**
      **8836 Bainbridge Drive**
      **Daphne, Alabama 36526**

      **Defendant the 68 Ventures, LLC, is to be served via certified mail at:**

      **Nathan L. Cox, Registered Agent**
      **29891 Woodrow Lane, Suite 300**
      **Spanish Fort, AL 36527**