**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BELFOREST WATER SYSTEM, an Alabama mutual benefit corporation,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**The CITY OF DAPHNE, an Alabama municipal corporation; the UTILITIES BOARD OF THE CITY OF DAPHNE, a public utilities corporation; the INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF DAPHNE, an Alabama public corporation; and 68 VENTURES, LLC, an Alabama limited liability company,**<br><br>**Defendants.** | **)** | **Case No: 1:26-cv-00254-KD-MU** |

**<u>CITY OF DAPHNE'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Defendant City of Daphne (the "City") submits this Reply in support of its Motion to Dismiss (Doc. 13) and in response to Belforest Water System's ("BWS") Consolidated Response in Opposition to Motions to Dismiss (Doc. 24).

## INTRODUCTION

BWS's forty-four-page Response does not cure the fundamental defects in the two claims it asserts against the City.

As to Count I, one fact remains dispositive of BWS's request for pre-enforcement review: **the specific franchise ordinance BWS asks this Court to adjudicate has never been enacted.** BWS admits as much. It nevertheless asks the Court to determine what a future ordinance will say, whether the City Council will enact it, how it will operate, and whether its yet-unknown

requirements will violate federal law. Neither the Declaratory Judgment Act nor the cases cited by BWS permit that advisory exercise.

BWS's merits argument fares no better. Section 1926(b) does not generally exempt a federally indebted water association from municipal regulation. Its text protects qualifying service from specified forms of competitive encroachment and provides that the happening of specified municipal events may not be used as the basis for requiring a franchise, license, or permit. BWS relies on cases involving annexation, actual competing water service, or physical intrusion by a competing utility. None holds that an independently imposed municipal right-of-way regulatory regime, unconnected to a covered statutory event, is itself prohibited by § 1926(b). Indeed, the Seventh Circuit recently questioned the expansive reading on which BWS relies and emphasized the tension between that approach and the statute's actual text. *Dupont Water Co. v. City of Madison*, 184 F.4th 966, 975–76 (7th Cir. 2026).

BWS also does not answer the City's § 1983 argument under *Medina v. Planned Parenthood South Atlantic*, 606 U.S. 357 (2025). Instead, it relies principally on the pre-*Gonzaga* analysis of *Rural Water District No. 1 v. City of Wilson*, 243 F.3d 1263 (10th Cir. 2001), and the older *Blessing* framework that *Medina* expressly instructed lower courts not to use as a substitute for *Gonzaga*'s demanding rights-creating-language inquiry.

Finally, BWS's defense of Count IV depends heavily on allegations the Complaint does not actually make in that count. BWS now says that more than $600,000 in infrastructure expenditures constitute the present injury caused by the alleged conspiracy. But those allegations appear in paragraphs 74 through 76 of Count III, which Count IV does not incorporate. Count IV incorporates only specified earlier paragraphs and then alleges, in conclusory fashion, that BWS "has been injured." BWS cannot amend that pleading through its opposition brief. And even if

those expenditures were considered, the Complaint itself alleges they were incurred in response to 68 Ventures' water-pressure demands and in reliance on the IDB's obligations under the Water Service Agreement, not as damages proximately caused by an unlawful duplication of service.

Count IV also remains barred against the City. BWS effectively concedes that § 11-47-190 precludes tort damages against the City for an intentional conspiracy claim. Its attempt to preserve declaratory and equitable relief overlooks Alabama's separate doctrine of substantive immunity, which applies to prevent tort claims, including claims seeking injunctive relief, from controlling municipal legislative, regulatory, and public-service policy decisions. The Motion should be granted.

## ARGUMENT

### I. COUNT I REMAINS UNRIPE BECAUSE BWS CHALLENGES LEGISLATION THAT HAS NEVER BEEN ENACTED.

BWS's primary ripeness argument is that, because Count I seeks declaratory relief, BWS "does not need to wait until it suffers an injury." (Doc. 24, PageID. 258). That argument misstates the law. The Declaratory Judgment Act is "procedural only;" it does not expand federal jurisdiction or dispense with Article III's case-or-controversy requirement. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). The United States Supreme Court has been direct on this issue: "a claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted). BWS responds with the uncontroversial proposition that a plaintiff seeking declaratory relief need not always wait until an anticipated injury has actually occurred. (Doc. 24, PageID. 257–258.) The City does not contend otherwise. The question is whether the threatened injury is sufficiently concrete and immediate to create an Article III controversy. It is not in this case.

BWS's principal new authority, *Sheriff of Broward County v. Evanston Insurance Co.*, 159 F.4th 792 (11th Cir. 2025), illustrates the difference. There, an existing insurance contract governed the parties; sixty lawsuits had already been filed against the insured; the insured had already incurred substantial defense expenses; and the insurer had communicated its definitive position concerning the coverage obligation under that existing contract. *Id.* at 803–06. The future injury depended on application of an existing legal agreement to events that had already occurred. Here there is no existing ordinance to interpret. BWS alleges that the City transmitted a draft ordinance in January 2024; that the parties negotiated; that BWS later proposed its own substantially modified ordinance; that the City did not adopt that proposal; and that BWS withdrew it in June 2026. (Compl. ¶¶ 31–32, 51, 63.) BWS identifies no ordinance thereafter introduced before the City Council, no final language, no agenda item, no scheduled vote, and no legislative action committing the City to any particular terms. Its remaining allegation is only that, "[o]n information and belief," the City "continues to desire to enact a Franchise Ordinance." (*Id.* ¶ 64.)

That is precisely the sort of contingent future dispute Article III does not permit a federal court to adjudicate. The City Council might enact an ordinance, might enact a materially different ordinance, or might enact none at all. Until the legislative process produces an ordinance, the Court cannot know what provisions would govern BWS, whether those provisions would impose the particular conditions BWS challenges, or whether BWS would suffer the asserted injury.

BWS attempts to distinguish *Digital Properties, Inc. v. City of Plantation*, 121 F.3d 586 (11th Cir. 1997), and *National Advertising Co. v. City of Miami*, 402 F.3d 1335 (11th Cir. 2005), because those cases involved zoning procedures and available administrative review. (Doc. 24, PageID. 259–260.) But the pertinent principle is not exhaustion. It is finality and concreteness. *Digital Properties* expressly held that "[w]ithout the presentation of a binding conclusive

administrative decision, no tangible controversy exists." 121 F.3d at 590. *National Advertising* applied the same principle because the governmental decision had not been conclusively made. 402 F.3d at 1340–41.

Indeed, those cases involved disputes more developed than this one because an ordinance already existed. The uncertainty concerned how the municipality would apply an existing law. Here the City Council has not enacted the law BWS asks this Court to review.

Nor does counsel's statement during negotiations that maintaining the "status quo" was "not an option" change the analysis. (Compl. ¶ 64.) A negotiating position is not an ordinance, much less a legislative act of the City Council. It establishes neither what ordinance will ultimately be considered nor what terms it might contain.

BWS also invokes the state-court litigation concerning DU's ability to serve Prospect Park. (Doc. 24, PageID. 261–262.) But that litigation does not make the separate franchise-ordinance controversy ripe. The state case concerns the 2002 Settlement Agreement and whether DU may serve Prospect Park following BWS's constructive declination. It does not establish that the City Council will enact the franchise ordinance attached to this Complaint.

The Declaratory Judgment Act does not alter the Article III analysis. It authorizes relief only in an existing "case of actual controversy." 28 U.S.C. § 2201(a). It does not permit a court to adjudicate the legality of proposed legislation before the legislative process has produced a law to review. Count I should be dismissed under Rule 12(b)(1).

## II. BWS CONFLATES THE CITY'S ROLE IN THE STATE COURT LITIGATION WITH THE ORDINANCE THAT IS THE SOLE SUBJECT OF COUNT I.

BWS argues that "there is nothing uncertain about Defendants' intent to curtail BWS's services," pointing to the City's execution of the Purchase and Sale Agreement, the seller warranty regarding water service, and the City's participation in the Baldwin County action. (Doc. 24,

PageID. 258–259). None of those facts bears on Count I. In fact, Count I asks for a declaration that the City, "by adopting the ordinance as proposed, will unlawfully curtail or limit BWS's service," and for an injunction against "adopting a franchise ordinance." (Doc. 1, PageID. 16). The Purchase and Sale Agreement and the state court action concern whether DU may serve Prospect Park—the subject of Count II against DU and Count IV. They say nothing about whether, when, or on what terms the City Council will legislate regarding the use of City rights-of-way. BWS's effort to borrow the concreteness of one dispute to supply ripeness for another is a tacit acknowledgement that the ordinance dispute, standing alone, is not ripe.

The only fact BWS identifies that actually relates to the ordinance is counsel's statement during negotiations that maintaining "the status quo is not an option." (Doc. 24, PageID. 260; Doc. 1, ¶ 64). However, that statement was made while the parties were exchanging proposals, and it was expressly coupled with an invitation to review "any offers [BWS] is willing to make ... including the prospect of a 'fresh start.'" (Doc. 1, ¶ 64). A negotiating position is not legislation, and it does not identify which ordinance the City Council might consider, what its terms will be, or whether it would even pass.

## III. BWS'S AUTHORITIES DO NOT ESTABLISH THAT § 1926(b) PROHIBITS THE INDEPENDENT MUNICIPAL REGULATION ALLEGED HERE.

Even if Count I were ripe as to the City, BWS still reads § 1926(b) beyond its text. The statute provides that qualifying service:

> "shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan; **nor shall the happening of any such event be the basis of requiring such association to secure any franchise, license, or permit** as a condition to continuing to serve the area served by the association at the time of the occurrence of such event."

7 U.S.C. § 1926(b) (emphasis added). The second clause does not say that a federally indebted association can never be required to obtain a franchise, license, or permit. It says that "the happening of any such event"—the events identified immediately before that phrase—may not be made the basis for imposing such a requirement as a condition of continuing service.

BWS's Response largely bypasses that language. Instead, it collects cases describing § 1926(b) in broader terms and argues that the reference to franchises, licenses, or permits creates an independent prohibition untethered to the statutory phrase "the happening of any such event." (Doc. 24, PageID. 263–269.) But the cases BWS relies upon did not decide the question presented here.

*Spanish Fort Water System v. North Baldwin Utilities*, 618 F. Supp. 3d 1321 (S.D. Ala. 2022), for example, involved actual competitive conduct: North Baldwin Utilities had installed approximately thirty feet of twelve-inch water line in the disputed service area. *Id*. at 1326–27. In describing the general § 1926(b) framework, the Court observed that "curtailed or limited services" had been interpreted to include annexation, conditions such as franchise or permit requirements, and physical intrusion. *Id*. But *Spanish Fort* did not involve an independent municipal right-of-way ordinance, much less decide whether the statute eliminates generally applicable municipal regulatory authority unrelated to annexation or a competing franchise.

The other cases BWS cites arise from the same competitive-encroachment context. *Glenpool Utility Services Authority v. Creek County Rural Water District No. 2*, 861 F.2d 1211 (10th Cir. 1988), involved municipal annexation followed by competing water service. *Jennings Water, Inc. v. City of North Vernon*, 895 F.2d 311 (7th Cir. 1989), involved a municipality extending a pipeline to provide competing water service to an existing customer. *Bell Arthur Water Corp. v. Greenville Utilities Commission*, 173 F.3d 517 (4th Cir. 1999), likewise involved

annexation and municipal provision of competing service. None holds that § 1926(b) creates a freestanding federal exemption from local right-of-way regulation.

*Chesapeake Ranch Water Co. v. Board of Commissioners*, 401 F.3d 274 (4th Cir. 2005), does not establish otherwise. BWS quotes its description of prohibited conduct as including annexation or “conditions for service such as the requirement of a franchise, license, or permit.” (Doc. 24, PageID. 266–267.) But *Chesapeake Ranch* simultaneously emphasized that § 1926(b) protects against “only certain forms of competitive behavior,” 401 F.3d at 278, and rejected an effort to use the statute against governmental conduct that impaired the association but did not constitute a statutorily cognizable competitive encroachment. *Id*. at 281–82. The Fourth Circuit also described the statutory purpose in “defensive” terms, protecting territory already served by a rural association against municipal expansion. *Id*. at 280–81.

Most significantly, the Seventh Circuit revisited this body of law just months ago in *Dupont Water Co. v. City of Madison*, 184 F.4th 966 (7th Cir. 2026). The court acknowledged that *Jennings Water* had expanded § 1926(b) beyond the forms of municipal encroachment identified by its text and stated that the defendant municipality had raised “serious questions” about that expansion. *Id*. at 975. The court further recognized “the tension between this prevailing view of § 1926(b) and the statute’s actual text” and observed that § 1926(b)’s text suggests Congress did not intend to insulate federally indebted associations “from all forms of competition.” *Id*. at 975–76. Although the court did not overrule *Jennings Water* because the case could be decided on other grounds, it expressly suggested that the expansive precedent may warrant reconsideration in an appropriate case. *Id*. That recent analysis matters here because BWS repeatedly invokes a supposed universal mandate to construe § 1926(b) broadly. (Doc. 24, PageID. 264–269.) Whatever force that approach once carried, it cannot replace the statutory text.

BWS now states that it "is not arguing that federal indebtedness creates immunity from municipal fees or licensing, permitting, or franchise requirements, or that every regulation touching a public right-of-way violates § 1926(b)." (Doc. 24, PageID. 269). That concession exposes the pleading defect. If some right-of-way regulation, permits, and fees are permissible, BWS must plead facts plausibly showing how the particular requirements challenged here would actually curtail or limit its service. The Complaint identifies the proposed permit and fee requirements, but alleges only conclusorily that they "would curtail or limit" BWS's service and affect its ability to repay its federal indebtedness. (Doc. 1, ¶¶ 67-68). BWS's Response adds new assertions that the fee's "amount, calculation, and cumulative burden" would "materially impair" BWS's ability to serve, and that non-payment would permit revocation of BWS's authority. (Doc. 24, PageID. 269.) Those assertions appear nowhere in the Complaint and, even if they did, are conclusions rather than pleaded facts. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A regulatory burden, without more, does not establish curtailment within the meaning of § 1926(b). See *Chesapeake Ranch*, 401 F.3d at 281-82; *Rural Water Dist. No. 4 v. City of Eudora*, 659 F.3d 969, 984-86 (10th Cir. 2011).

And BWS's own theory illustrates the problem. The draft ordinance attached to the Complaint concerns BWS's installation and maintenance of facilities in City rights-of-way and includes regulatory and fee provisions associated with that use. BWS does not allege that the proposed ordinance resulted from the annexation of its service area or the granting of a competing private franchise. Nor does it allege that the City has enacted the proposed ordinance in order to enable a competing utility physically to enter BWS's territory. Instead, BWS seeks a declaration that its federal indebtedness prevents the City from adopting the proposed regulatory requirements

at all. Section 1926(b) does not say that. Count I should therefore be dismissed under Rule 12(b)(6) even if the Court reaches the merits.

## IV. BWS HAS NOT SHOWN THAT § 1926(b) CREATES AN INDIVIDUAL FEDERAL RIGHT ENFORCEABLE THROUGH § 1983.

BWS's § 1983 argument demonstrates precisely why *Medina* matters. The threshold question is not whether § 1926(b) benefits BWS, imposes mandatory obligations, or lacks another enforcement mechanism. The threshold question is whether Congress "clearly and unambiguously" conferred an individual federal **right** using rights-creating language with an unmistakable focus on the benefited class. *Medina*, 606 U.S. at 368; *Health & Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166, 183–86 (2023).

*Medina* emphasized that this is a "demanding bar" cleared only in the "atypical case." 606 U.S. at 375–77. And it directly addressed the framework BWS invokes here. Some lower courts, the Supreme Court explained, continued to consult *Wilder*, *Wright*, and *Blessing* when determining whether federal spending legislation created privately enforceable rights. They "should not." *Id.* at 376. *Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002), rejected any approach permitting "anything short of an unambiguously conferred right," and *Talevski* reaffirmed that *Gonzaga* supplies the established method. *Medina*, 606 U.S. at 376.

Yet BWS relies extensively on *Arrington v. Helms*, 438 F.3d 1336 (11th Cir. 2006), to recite the older *Blessing* factors and on *Rural Water District No. 1 v. City of Wilson*, 243 F.3d 1263 (10th Cir. 2001), for the proposition that § 1926(b) creates a § 1983-enforceable right. (Doc. 24, PageID. 272–277.) *City of Wilson* was decided before *Gonzaga* and expressly applied the *Blessing* test. 243 F.3d at 1275. It therefore did not apply the demanding rights-creating-language inquiry now required by *Gonzaga*, *Talevski*, and *Medina*.

Section 1926(b) does not resemble the statutory provisions that passed that test in *Talevski*. There, Congress expressly referred to a resident's "right to be free from" unnecessary restraints, created "[t]ransfer and discharge rights," and placed those provisions within a subsection titled "[r]equirements relating to residents' rights." *Talevski*, 599 U.S. at 184–86. *Medina* relied on that language as the relevant benchmark. 606 U.S. at 376–78.

Section 1926(b), by contrast, does not say that an association "has a right" to be free from municipal regulation. It says that "[t]he service provided or made available through any such association" shall not be curtailed or limited by specified events. Its grammatical focus is the federally financed *service*, and its operation is tied to the duration of the federal loan. That language unquestionably benefits qualifying associations and protects the federal government's interest in repayment. But *Medina* makes clear that a statutory benefit or protected interest is not enough.

BWS's reliance on *Freemanville Water System, Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205 (11th Cir. 2009), proves no more. The Eleventh Circuit expressly declined to decide whether § 1926(b) creates even a private right of action, noting that "[i]t could be argued" that the provision merely restricts federally financed encroachment without giving an injured party a right to sue. *Id*. at 1207 n.2. The court proceeded only on an assumption that was "not critical to the outcome." *Id*.

Nor does *Park City Water Authority, Inc. v. North Fork Apartments, L.P.*, 2009 WL 3425674 (S.D. Ala. Oct. 21, 2009), resolve the issue for BWS. Judge Steele declined to decide the § 1983 issue because the movant had merely described the governing test "without meaningfully applying it," and the Court would not supply the missing analysis. *Id*. at *5–6. That procedural ruling is not a holding that § 1926(b) creates an enforceable federal right. And the City has supplied

the analysis that was missing there—an analysis now governed by two subsequent Supreme Court decisions, *Talevski* and *Medina*.

Finally, BWS puts the cart before the horse when it emphasizes that § 1926 contains no comprehensive enforcement scheme incompatible with § 1983. (Doc. 24, PageID. 275–277.) That question arises only *after* a plaintiff first establishes that Congress unambiguously created an individual right. *Gonzaga*, 536 U.S. at 284-85; *Talevski*, 599 U.S. at 186–87. BWS has not crossed that threshold.

Accordingly, at minimum, BWS's § 1983 theory and its derivative request for attorneys' fees under § 1988 should be dismissed.

## V. BWS'S RESPONSE DOES NOT SAVE COUNT IV.

### A. BWS Cannot Rewrite Count IV Through Its Opposition Brief.

BWS's Response portrays Count IV as a conspiracy to violate both § 1926(b) and Ala. Code § 11-50-1.1 and argues that more than $600,000 in infrastructure expenditures constitute present damages caused by the conspiracy. (Doc. 24, PageID. 284–285, 293–294.) The Complaint says something materially different. Count IV alleges:

> "Defendants (the City, IDB and 68 Ventures) have conspired with each other to curtail BWS' ability to serve its admitted service territory comprising the Prospect Park project. They have conspired and taken concerted action to facilitate and enable DU's duplication of BWS services to the Prospect Park project territory **in violation of Alabama law**."

(Compl. ¶ 81 (emphasis added).) Count IV does not plead a conspiracy count under § 1926(b). And while paragraph 80 incorporates selected factual allegations, it incorporates only paragraphs 1–13, 21, 23, 24, and 27–61. It does **not** incorporate paragraphs 74–76, the allegations concerning the more than $600,000 in expenditures, consulting costs, and $165,000 tank site on which BWS now relies as the "present injury" caused by the conspiracy.

Those allegations belong to Count III. There, BWS expressly alleges that it incurred the expenditures "in response to" the water-pressure demands made by "68 Ventures' agents" and "in reliance upon the IDB's representation in the WSA" that the IDB would bear increased-pressure costs. (Compl. ¶¶ 74–76.) BWS cannot now transform contract damages pleaded against the IDB into conspiracy damages pleaded against the City.

A response brief cannot amend the Complaint. Indeed, *Park City* itself rejected similar attempts to expand claims beyond the counts actually pleaded, explaining that the identity and scope of a claim are determined from the language of the complaint, not a plaintiff's later characterization in briefing. 2009 WL 3425674, at *3 & nn.6, 11–12.

What Count IV actually alleges as to injury is a single conclusion: "Plaintiff has been injured as a proximate result of the conspiracy." (Compl. ¶ 82.) *Twombly* and *Iqbal* require more.

**B. The Alleged Unlawful Object Has Not Occurred.**

BWS acknowledges the rule that a civil conspiracy is derivative and cannot survive without an actionable underlying wrong. (Doc. 24, PageID. 284.) Its response then shifts focus from the alleged underlying wrong to overt acts allegedly taken in pursuit of the conspiracy.

But overt acts are not a substitute for an actionable underlying wrong. The Complaint alleges that the defendants sought to "facilitate and enable DU's duplication" of BWS's service in violation of Alabama law. (Compl. ¶ 81.) DU has not duplicated BWS's service to Prospect Park. BWS's own allegations confirm that DU has not served the property and has refrained from doing so because of the 2002 Settlement Agreement. (Compl. ¶ 58.)

Filing a lawsuit, requesting water-pressure information, requesting a will-serve letter, conducting due diligence, or submitting a proposed order does not independently constitute unlawful duplication under Ala. Code § 11-50-1.1. Even assuming those actions were coordinated,

lawful acts do not become an actionable underlying tort merely because BWS alleges they were undertaken with an objective BWS opposes.

*Jones* and *Freeman* do not help BWS. Both hold only that a conspiracy claim requires *some* viable underlying claim; they say nothing about substituting overt acts for a completed wrong. (Doc. 24, PageID. 292 (citing *Jones*, 632 So. 2d at 439; *Freeman*, 179 So. 3d at 106).) And the "underlying wrongs" BWS now identifies do not save Count IV. Count IV does not plead § 1926(b) as an underlying wrong, and in any event that theory fails for the independent reasons set out in Sections I–IV above. Nor has any unlawful duplication occurred under § 11-50-1.1. BWS cannot manufacture a viable predicate by relabeling the same unripe or otherwise deficient theories as the "underlying wrong" for Count IV. The derivative conspiracy claim therefore still fails.

*Aliant Bank*'s rule that one conspirator's wrong may be attributed to another does not assist BWS here, because the Complaint does not allege that any defendant, including DU, has completed the "unlawful duplication" § 11-50-1.1 requires. 244 So. 3d at 933. Attribution among conspirators presupposes that *someone* committed an underlying wrong; the Complaint fails to make that identification to support any attribution.. Accordingly, Count IV still fails for lack of a viable underlying wrong.

**C. 11-47-190 Bars the Damages Claim, and Substantive Immunity Independently Bars BWS's Attempt to Obtain Equitable Tort Relief Against the City.**

BWS does not dispute that civil conspiracy is an intentional tort or that § 11-47-190 bars intentional tort claims for damages against municipalities. *Aliant Bank v. Four Star Invs., Inc.*, 244 So. 3d 896, 927 (Ala. 2017); *Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993). Indeed, BWS concedes that *Scott v. City of Mountain Brook*, 602 So. 2d 893 (Ala. 1992), held a municipality immune from a conspiracy claim seeking damages. (Doc. 24, PageID. 295). BWS's

sole response is that Count IV also requests "a declaration that the Defendants conspired" and "equitable relief." (*Id.*)

BWS is correct that Count IV requests nonmonetary relief in addition to damages, but that does not save the claim. To the extent Count IV seeks compensatory, special, or punitive damages for civil conspiracy, § 11-47-190 bars those damages against the City because conspiracy is an intentional tort. The only specific nonmonetary relief identified in Count IV is a "declaratory judgment that [the Defendants] have engaged in conspiracy." (Doc. 1, PageID. 20). That is a retrospective declaration concerning alleged past tortious conduct, rather than a declaration defining the parties' future legal relations. To the extent BWS seeks forward-looking relief against future City conduct, that relief is addressed in Count I. In any event, BWS's attempt to preserve declaratory or equitable relief encounters Alabama's separate doctrine of substantive immunity, discussed below.

BWS's only authority on this is a special concurrence, *Britt v. City of Hoover*, 434 So. 3d 614, 616 (Ala. 2025) (Mitchell, J., concurring specially), which is not a holding of the Alabama Supreme Court and, as BWS describes it, addresses additional requests for equitable or declaratory relief, not a declaration that a municipality committed an intentional tort. (Doc. 24, PageID. 295).

BWS effectively concedes that Ala. Code § 11-47-190 precludes tort damages against a municipality based on intentional conduct. (Doc. 24, PageID. 295.) It instead argues that the statute uses the word "damages" and therefore does not foreclose the declaratory and equitable relief requested in Count IV. That argument answers only the statutory-immunity question. It ignores Alabama's separate common-law doctrine of substantive immunity.

In *Ex parte City of Muscle Shoals*, 384 So. 3d 37 (Ala. 2023), residents sought an injunction directing a municipality to enact a particular stormwater-management plan or control how it

enforced existing ordinances. The Alabama Supreme Court held that substantive immunity barred the injunctive claim because municipal decisions regarding enactment and enforcement of public-service policies are public-policy decisions "made in connection with the City's responsibility to provide for the public's safety, health, and general welfare." *Id*. at 44–45. The Court therefore directed dismissal of the claim for injunctive relief. *Id*. at 45.

The doctrine is not limited to damages. It prevents, in the first instance, imposition of an individualized tort duty in those narrow areas of governmental activity so laden with the public interest that liability would materially interfere with legitimate municipal efforts to provide public services. *Id*. at 41–45; see also *City of Orange Beach v. Boles*, 393 So. 3d 1, 9–10 (Ala. 2023).

BWS's own cited authority confirms the distinction. In *Britt*, 434 So. 3d 614, the Alabama Supreme Court affirmed without opinion a judgment holding the plaintiff's claims barred by substantive immunity. Justice Mitchell's special concurrence (the opinion BWS quotes) explained that § 11-47-190 itself addresses damages, but that the **separate substantive-immunity doctrine bars declaratory and injunctive tort claims** directed at protected municipal policy decisions. *Id*. at 616–18 (Mitchell, J., concurring specially). Thus, even the reasoning BWS invokes supports the City's position once the two doctrines are kept distinct.

The conduct BWS challenges here implicates core municipal policy functions: whether and how the City will regulate use of its public rights-of-way, whether the City will enact legislation governing utility operations within municipal boundaries, and how the City will address public utility service associated with a major development. A state-law conspiracy claim cannot be used to impose an individualized tort duty on the City concerning those legislative and public-service policy choices.

To the extent Count IV seeks damages, § 11-47-190 bars the intentional-tort claim. To the extent BWS seeks declaratory or equitable tort relief controlling the City's protected policy decisions, substantive immunity independently bars that relief.

**D. The Remaining Municipal-Law Arguments Do Not Preserve Count IV.**

BWS also argues that § 11-47-23 does not bar Count IV because the conspiracy allegedly continued into 2026. (Doc. 24, PageID. 296.) But the City did not argue that every possible conspiracy theory accrued before January 15, 2026. The Motion explained that, *to the extent* BWS claims that the conduct occurring in 2024 and 2025 had already produced an actionable tort injury, any such damages claim accrued outside the six-month presentment period. (Doc. 13, PageID. 143–144.)

BWS's present position underscores the point. To avoid the pleading problem created by the absence of actual duplication, BWS now insists that it was already damaged by expenditures incurred while the alleged conspiracy was underway. If those expenditures created an actionable tort claim more than six months before suit, § 11-47-23 applies. If they did not, they cannot supply the completed injury BWS invokes to save Count IV. In any event, the more fundamental defects addressed above independently require dismissal.

BWS also does not dispute that punitive damages are unavailable against the City under Ala. Code § 6-11-26. Its reliance on *Raley v. Citibanc of Alabama/Andalusia*, 474 So. 2d 640, 642 (Ala. 1985), is misplaced. *Raley* construes Ala. R. Civ. P. 12(b)(6), Alabama's own rule governing pleading practice in Alabama's state courts, not Fed. R. Civ. P. 12(b)(6), under which this federal action proceeds. See *Garcia v. Chiquita Brands Int'l, Inc.*, 48 F.4th 1202, 1210-11 (11th Cir. 2022) (where a Federal Rule of Civil Procedure covers the disputed issue, federal rather than state procedural law applies) (citing *Hanna v. Plumer*, 380 U.S. 460, 469-70 (1965)). Federal courts

sitting in Alabama have dismissed punitive-damages claims against municipalities under § 6-11-26 on a Rule 12 motion. See, e.g., *Harrelson v. Elmore County*, Ala., 859 F. Supp. 1465, 1469 (M.D. Ala. 1994) (granting city's and county's motions to dismiss and ordering punitive-damages claims "STRICKEN" under § 6-11-26). At minimum, that requested relief should be eliminated now.

## VI. THE CITY'S ALTERNATIVE JURISDICTIONAL AND STAY ARGUMENTS REMAIN AVAILABLE.

BWS's supplemental-jurisdiction argument depends entirely on its assumption that Counts I and II survive. (Doc. 24, PageID. 297.) If the Court dismisses both federal claims, § 1367(c)(3) permits the Court to decline supplemental jurisdiction over the remaining Alabama-law claims, and the considerations identified in the City's opening brief favor doing so at this early stage.

BWS's abstention discussion likewise does not undermine the narrower position the City actually advanced. The City acknowledged in its Motion that the state and federal actions are not identical and did not rely on abstention as its primary ground for dismissal. (Doc. 13, PageID. 147–150.) Rather, the City requested that, if any overlapping claims survive the Rule 12 grounds, the Court exercise appropriate discretion to avoid unnecessary and potentially inconsistent adjudication while the substantially advanced Alabama proceeding remains pending. BWS's Response supplies no reason to withdraw that alternative request.

## CONCLUSION

For these reasons and those stated in its Motion to Dismiss, the City respectfully requests that the Court grant the Motion and dismiss the claims asserted against the City, together with such other and further relief as the Court deems appropriate.

Respectfully submitted,

*/s/ A. Patrick Dungan*

JAY M. ROSS
jay.ross@arlaw.com
A. PATRICK DUNGAN

patrick.dungan@arlaw.com
*Attorneys for Defendant City of Daphne*

**OF COUNSEL:**
ADAMS & REESE LLP
Post Office Box 1348
Mobile, Alabama 36633
T: (251) 433-3234

*/s/ Thomas O. Gaillard, III**
THOMAS O. GAILLARD, III
*Attorney for Defendant City of Daphne*
**** E-Signature Affixed with Permission***

**OF COUNSEL:**
HELMSING, LEACH, HERLONG,
NEWMAN & ROUSE, P.C.
Post Office Box 2767
Mobile, AL 36652
(251) 432-5521
Email: TOG@helmsinglaw.com

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the 28th day of October, 2026, electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record. I further certify that I served a copy of the foregoing by electronic mail upon counsel for the parties who have not yet appeared in this action.

George R. Irvine, III
Finley R. Reeves
**Stone Crosby, P.C.**
8820 U.S. Highway 90
Daphne, Alabama 36526
girvine@stonecrosby.com
freeves@stonecrosby.com
*Attorneys for Plaintiff Belforest Water System*

Brad A. Everhardt
Randall Morgan
**Hill, Hill, Carter, Franco, Cole & Black, P.C.**
425 South Perry Street
P.O. Box 116
Montgomery, AL 36101-0116
beverhardt@hillhillcarter.com
rmorgan@hillhillcarter.com
*Attorneys for Defendant Daphne Utilities*

Jay M. Ross
A. Patrick Dungan
**Adams & Reese LLP**
Post Office Box 1348
Mobile, Alabama 36633
jay.ross@arlaw.com
patrick.dungan@arlaw.com
*Attorneys for Defendants City of Daphne and Industrial Development Board of the City of Daphne*

Thomas O. Gaillard, III
**Helmsing Leach**
150 Government Street, Suite 2000
Mobile, AL 36652
tog@helmsinglaw.com
*Additional Attorney for Defendant City of Daphne*

Mark L. Redditt
**Maynard Nexsen, P.C.**
11 N. Water Street
Suite 24290
Mobile, AL 36602
mredditt@maynardnexsen.com
*Additional Attorney for Defendant Industrial Development Board of the City of Daphne*

James B. Pittman, Jr.
Asheton Sawyer
Nicholas C. Patti
**James B. Pittman, Jr., P.C.**
Post Office Box 2525
Daphne, AL 36526
james@jbplaw.com
asawyer@jbplaw.com
nick@jbplaw.com
*Attorneys for Defendant 68 Ventures, LLC*

*/s/ A. Patrick Dungan*
OF COUNSEL