**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BELFOREST WATER SYSTEM, an Alabama mutual benefit corporation,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**The CITY OF DAPHNE, an Alabama municipal corporation; the UTILITIES BOARD OF THE CITY OF DAPHNE, a public utilities corporation; the INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF DAPHNE, an Alabama public corporation; and 68 VENTURES, LLC, an Alabama limited liability company,**<br><br>**Defendants.** | ) | **Case No: 1:26-cv-00254-KD-MU** |

**INDUSTRIAL DEVELOPMENT BOARD OF THE CITY OF DAPHNE'S**
**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Industrial Development Board of the City of Daphne (the "IDB") submits this Reply in support of its Motion to Dismiss (Doc. 12) and in response to Belforest Water System's ("BWS") Consolidated Response in Opposition to Motions to Dismiss (Doc. 24).

## INTRODUCTION

BWS's Response does not cure the pleading defects identified in the IDB's Motion. Instead, it largely attempts to fill those gaps with theories that do not appear in the Complaint.

Count III turns on straightforward contractual language. Paragraph 2 of the Water Service Agreement ("WSA") obligates the IDB to bear the cost of greater pressure if greater pressure "is required by the IDB." The Complaint does not allege that the IDB required the pressure for which BWS now seeks reimbursement. It alleges that JADE Consulting, LLC ("JADE"), acting as an

agent of 68 Ventures, demanded water volume and pressure information as part of 68 Ventures' due diligence and that BWS incurred the claimed costs to provide the pressure called for by "68 Ventures' agents' Water Pressure Demand." (Compl. ¶¶ 36, 49, 75.)

BWS does not dispute those allegations. It instead advances a new theory: because Alabama law prohibits an industrial development board from itself operating a development, 68 Ventures and JADE should be treated as the IDB's agents for purposes of the WSA. (Doc. 24, PageID. 282–283.) Nothing in the Complaint pleads that relationship, nothing in the WSA says it, and nothing in the IDB's enabling statute creates it. BWS cannot use its opposition brief to convert the expressly pleaded agent of one entity into the agent of another.

BWS fares no better on anticipatory repudiation. It identifies no facts showing the "unqualified refusal" to perform required by Alabama law. The IDB timely exercised the WSA's express nonrenewal provision, while its participation in separate litigation concerning the 2002 Settlement Agreement says nothing about whether the IDB would perform an obligation properly arising under Paragraph 2 during the WSA's existing term. And BWS still does not allege that it incurred the $6.94 million tank-construction expense it seeks to place at the IDB's door.

Count IV suffers from a still more basic defect. BWS invokes *Aliant Bank* and *DGB* for the rule that a conspirator may be liable for an underlying wrong committed by another conspirator. That rule presupposes that someone actually committed the underlying wrong. Here, BWS affirmatively alleges that DU has not provided service to Prospect Park. There has therefore been no duplication prohibited by Ala. Code § 11-50-1.1. Alleged overt acts in pursuit of a future objective cannot substitute for the independently actionable wrong that Alabama conspiracy law requires.

The new "injury" theory in BWS's Response does not save the claim either. BWS now points to the same $600,000-plus in pressure-related expenditures alleged under Count III. But Count IV does not incorporate those allegations. And even if it did, the Complaint attributes those expenditures to 68 Ventures' pressure demand and BWS's claimed contractual right to reimbursement from the IDB, not to completed duplication of BWS's service.

If Counts I and II fall, the Court should not retain these state-law claims against the IDB; and if any claim against the IDB survives dismissal, it should be stayed pending resolution of the related, first-filed Alabama proceedings. The IDB's Motion should be granted.

## ARGUMENT

### I. BWS'S RESPONSE DOES NOT CURE COUNT III'S FAILURE TO PLEAD THAT PARAGRAPH 2 WAS TRIGGERED.

#### A. BWS's New Agency Theory Is Not Pleaded and Does Not Follow from the IDB's Enabling Statute.

The central contractual issue remains unchanged. Paragraph 2 of the WSA provides: "If greater pressure than that normally available at the point of delivery is required by the IDB the cost of providing such pressure shall be borne by the IDB." The condition is pressure "*required by the IDB*." The Complaint alleges something else.

According to BWS, 68 Ventures retained JADE "as its agent" to conduct due diligence concerning Prospect Park. (Compl. ¶ 36.) BWS repeats that relationship elsewhere, alleging that JADE acted "on behalf of 68 Ventures" and "as an agent of 68 Ventures." (*Id.* ¶¶ 37, 49.) Count III then expressly alleges that BWS incurred costs "in order to provide the pressure called for by 68 Ventures' agents' Water Pressure Demand." (*Id.* ¶ 75.) Those allegations do not plead that the IDB required greater pressure.

BWS's Response attempts to bridge that gap by asserting for the first time that "JADE and 68V were acting as the IDB's agents under the WSA." (Doc. 24, PageID. 282.) But that is not an

allegation in the Complaint. It is a new legal theory offered in briefing, and it conflicts with the agency relationship BWS actually pleaded. A plaintiff may not use its opposition to a motion to dismiss to advance a theory not pleaded in the complaint; the proper vehicle is a motion to amend under Rule 15(a), not an argument raised for the first time in briefing. See *Huls v. Llabona*, 437 F. App'x 830, 832–33 n.5 (11th Cir. 2011) (unpublished) (new argument raised "for the first time in [a] response to [a] motion to dismiss, instead of seeking leave to file an amended complaint," is "not properly raised") (citing *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004)); see also *Temploy, Inc. v. National Council on Compensation Ins*., 650 F. Supp. 2d 1145, 1153–54 (S.D. Ala. 2009) ("New claims can not be raised in response to summary judgment" (also citing *Gilmour*, 382 F.3d at 1315)).

BWS derives its new theory from Ala. Code § 11-54-81(a)(3), which provides that an industrial development board may promote development but may not itself operate a manufacturing, industrial, commercial, or research enterprise. From that limitation, BWS reasons that because there necessarily will be a future developer, the future developer's demands must be treated as the IDB's demands for purposes of Paragraph 2. (Doc. 24, PageID. 282–283.)

The statute says no such thing. A prohibition against the IDB operating a private enterprise does not make every eventual purchaser or developer the IDB's agent, much less transform that developer's engineering consultant into the IDB's agent under a separate contract with BWS.

The cases BWS cites for the proposition that existing law is incorporated into a contract do not establish otherwise. See *Macon County Greyhound Park, Inc. v. Knowles*, 39 So. 3d 100, 107–08 (Ala. 2009); *Homes of Legend, Inc. v. McCollough*, 776 So. 2d 741, 746 (Ala. 2000); *Barber Pure Milk Co. of Montgomery, Inc. v. Alabama State Milk Control Board*, 275 Ala. 489, 494, 156 So. 2d 351, 355 (1963). The principle that contracts are construed against the background of

existing law does not create an agency relationship that neither the governing statute, the contract, nor the Complaint recognizes.

BWS's reliance on provisions of the Purchase and Sale Agreement ("PSA") does not help, and in fact cuts the other way. BWS notes that the IDB and City allegedly warranted water service to 68 Ventures and retained certain approval rights over 68 Ventures' development plan. (Doc. 24, PageID. 283.) But the PSA is a different agreement between different parties. BWS is not a party to it, and the WSA does not incorporate those PSA provisions into Paragraph 2. A contractual undertaking running from the sellers to 68 Ventures does not rewrite a separate bilateral agreement between the IDB and BWS.

BWS also mischaracterizes the IDB's argument as an affirmative defense under *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). (Doc. 24, PageID. 282.) The IDB is relying on the language of the very contractual obligation BWS seeks to enforce and the facts BWS itself pleaded. Paragraph 2 imposes the payment obligation when greater pressure "is required by the IDB," while the Complaint affirmatively alleges that the pressure demand came from JADE as 68 Ventures' agent. Accepting those allegations as true, they do not state a breach of Paragraph 2 as written.

**B. The WSA's Development Recitals Do Not Rewrite "Required by the IDB."**

BWS next argues that the IDB's interpretation would render Paragraph 2 meaningless or inequitable because the IDB itself could never operate the contemplated development. (Doc. 24, PageID. 283.) That misstates the IDB's argument.

The IDB does not contend that Paragraph 2 can apply only if the IDB personally constructs or operates buildings on the property. The point is narrower: whoever ultimately develops the property, Paragraph 2 makes the IDB responsible when greater pressure is **required by the IDB**.

It does not say "required by the development," "required by a purchaser," or "requested by a developer or its agent." That distinction gives every word of Paragraph 2 effect. It simply declines BWS's invitation to replace the contracting party identified in the clause with any future entity that may acquire or develop the property.

The WSA's recitals reinforce that reading but are not necessary to it. The agreement contemplated a then-defined development of up to six Class A office buildings totaling approximately 461,000 square feet and recited that BWS possessed sufficient capacity to serve it. The present Prospect Park concept is materially different. But even accepting BWS's argument that the parties contemplated future changes in the development, that does not alter the operative trigger they chose for additional-pressure costs.

The authorities BWS cites concerning constructions that render contractual provisions meaningless or inequitable therefore do not apply. See *Black Diamond Development Co. v. Thompson*, 979 So. 2d 47, 51 (Ala. 2007); *G.F.A. Peanut Ass'n v. W.F. Covington Planter Co.*, 192 So. 502, 506 (Ala. 1939). The IDB's reading leaves Paragraph 2 fully operative. BWS simply seeks a broader trigger than the parties wrote.

### C. BWS Still Does Not Plead an Anticipatory Repudiation or a Present $6.94 Million Tank Expense.

BWS's Response largely dismisses the IDB's repudiation argument as inappropriate at the pleading stage, relying on *Park City Water Authority, Inc. v. North Fork Apartments, L.P.*, 2009 WL 3425674 (S.D. Ala. Oct. 21, 2009), for the proposition that "inferential allegations" may satisfy Rule 8. (Doc. 24, PageID. 283–284.) That principle does not alter the substantive Alabama standard for repudiation.

An anticipatory repudiation requires words or conduct demonstrating an intent to refuse future performance and must amount to an "unqualified refusal" or a declaration of inability

substantially to perform. *Shirley v. Lin*, 548 So. 2d 1329, 1333–34 (Ala. 1989); *HealthSouth Rehabilitation Corp. v. Falcon Management Co.*, 799 So. 2d 177, 182 (Ala. 2001). BWS identifies no pleaded fact satisfying that standard.

First, the IDB's June 17, 2026 nonrenewal notice was expressly authorized by Paragraph 11 of the WSA. The notice did not purport to terminate the WSA immediately, deny its continued effectiveness through the existing term, or refuse to perform obligations properly arising before expiration. It merely exercised the contractual right not to enter another renewal term. Compliance with an express nonrenewal provision is not an unqualified refusal to perform the contract during the period in which the contract remains effective.

Second, the IDB's participation in the Baldwin County litigation does not establish repudiation. That action concerns the parties' rights arising from the separate 2002 Settlement Agreement between BWS and DU and whether DU may serve Prospect Park following a declination by BWS. BWS's Response never explains how litigating rights under that separate agreement constitutes an unqualified refusal by the IDB to perform an obligation properly triggered under Paragraph 2 of the WSA. Calling those facts "inferential allegations" does not change their legal effect. Nor do the nonrenewal notice and the litigation add up to repudiation when considered together: a timely exercise of an express contractual right and participation in a dispute over a different agreement remain, in combination, something less than an unqualified refusal to perform Paragraph 2. And if litigating a party's rights under a separate, disputed agreement were enough to show repudiation of an unrelated contract, nearly any lawsuit between parties with overlapping business dealings would support a repudiation claim against the litigant. Alabama law does not go that far.

BWS's proposed $6.94 million tank contract further illustrates the significance of its deficient repudiation theory. The Complaint alleges that BWS "will award" a $6,940,600 contract to Caldwell Tanks, Inc. (Compl. ¶ 77.) Its pre-suit demand likewise stated that bids had only recently opened and that BWS would contract for construction later. Thus, when this action was filed, BWS does not allege that it had paid that amount, entered into the construction contract, or otherwise incurred a fixed $6.94 million obligation.

BWS responds that it alleges other expenditures as well. (Doc. 24, PageID. 284.) But that does not answer the IDB's argument concerning the tank. Because BWS has not plausibly alleged an anticipatory repudiation or total breach, it cannot use that theory to accelerate a contemplated future $6.94 million capital expenditure into damages for total breach. And even apart from that defect, the Complaint alleges only an intended future construction contract, not an existing obligation in that amount.

Accordingly, Count III should be dismissed. At minimum, BWS's anticipatory-repudiation and total-breach theories and its claim to recover the prospective $6.94 million tank-construction expenditure should be dismissed.

## II. COUNT IV STILL FAILS TO STATE A CIVIL-CONSPIRACY CLAIM AGAINST THE IDB.

### A. *Aliant Bank* and *DGB* Do Not Eliminate the Requirement of an Actual Underlying Wrong.

BWS correctly observes that every member of an alleged conspiracy need not personally commit the underlying wrong. See *Aliant Bank v. Four Star Investments, Inc.*, 244 So. 3d 896, 933 (Ala. 2017); *DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010). But that principle answers a different question from the one presented here. It addresses attribution *after an underlying wrong exists*. It does not eliminate the antecedent requirement that an independently actionable wrong actually have been committed by someone.

Alabama law remains clear that conspiracy is derivative. "If the underlying wrong provides no cause of action, then neither does the conspiracy." *Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala. 1993); see also *Freeman v. Holyfield*, 179 So. 3d 101, 106 (Ala. 2015). The underlying wrong actually pleaded in Count IV is the alleged effort to "facilitate and enable DU's duplication of BWS services to the Prospect Park project territory in violation of Alabama law." (Compl. ¶ 81.) The apparent statutory predicate is Ala. Code § 11-50-1.1, which prohibits a municipality from "acquiring, or duplicating" the services of a qualifying waterworks system without the required consent. But BWS affirmatively pleads that DU has not provided service to Prospect Park. (Compl. ¶ 58.) Its Response concedes the same point. (Doc. 24, PageID. 292, 294.) There has therefore been no completed duplication by DU, the City, or anyone else.

BWS responds that Count IV need not "wait for DU to serve Prospect Park" because the defendants allegedly committed overt acts in furtherance of the conspiracy. (Doc. 24, PageID. 292.) It identifies pressure testing, requests for a will-serve letter, communications among the parties, the state-court action, and the proposed order entered in that proceeding. (*Id.*, PageID. 293.)

But an overt act in furtherance of an alleged conspiracy is not itself the independently actionable underlying wrong that Alabama law requires. Filing a lawsuit, conducting due diligence, requesting water-service information, requesting a will-serve commitment, or seeking consent for another provider to serve does not constitute "acquiring" or "duplicating" BWS's service under § 11-50-1.1.

Indeed, BWS acknowledges elsewhere that § 11-50-1.1 permits duplication with the required consent and that asking for consent is lawful. Its theory thus reduces to the proposition

that attempting to persuade BWS to consent becomes unlawful if the request is sufficiently calculated to obtain that consent. Neither the statute nor BWS's authorities support such a rule.

BWS also invokes § 1926(b) as an additional predicate for Count IV. Count IV's operative allegation identifies the alleged unlawful objective as facilitating DU's duplication of BWS's services "in violation of Alabama law." (Compl. ¶ 81.) Paragraph 80, however, incorporates earlier allegations that include BWS's contention that the alleged scheme also implicated § 1926(b). Even assuming those incorporated allegations are sufficient to place a § 1926(b) theory within Count IV, that theory does not cure the defect.

Any § 1926(b) predicate depends upon the viability of the federal statutory claims separately challenged by the City and DU. And the § 11-50-1.1 predicate independently fails because no acquisition or duplication of BWS's service has occurred. BWS's Response identifies alleged steps taken toward those asserted objectives, but it still does not identify a completed, actionable underlying wrong. *Aliant Bank* therefore does not assist BWS. Attribution among conspirators presupposes that someone committed a viable underlying wrong. The Complaint identifies no completed wrong to attribute from one alleged conspirator to another.

### B. BWS Still Does Not Plausibly Allege That the IDB Entered an Unlawful Agreement.

BWS's Response adds detail concerning communications among the City, 68 Ventures, and JADE. But the question for the IDB remains whether the Complaint pleads facts making it plausible that *the IDB* entered an agreement to violate Alabama law. It does not.

BWS emphasizes a statement allegedly concerning the Mayor's view of future DU service, internal communications among JADE personnel, a reference to providing information to the City as the "key line," and discussions regarding the scope and phasing of 68 Ventures' proposed

development. (Doc. 24, PageID. 286–287, 293.) Those allegations concern the City, 68 Ventures, or JADE.

The allegations specifically concerning the IDB remain essentially those identified in the Motion: the IDB owned or facilitated the sale of the property; entered the PSA with 68 Ventures; permitted due diligence concerning utility service; participated in discussions regarding development of the property; and later joined the City and 68 Ventures as a plaintiff in the state declaratory-judgment action. None of those acts is unlawful.

BWS also points to overlapping board or employment relationships among individuals associated with the City, IDB, DU, and 68 Ventures. But shared or overlapping personnel does not, without more, plausibly establish an agreement by the IDB to violate § 11-50-1.1. Rule 8 requires factual allegations permitting an inference of unlawful agreement, not merely facts consistent with parties pursuing a shared economic-development objective. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

At most, the pleaded facts show that the IDB, City, and proposed purchaser shared an interest in determining whether Prospect Park could obtain adequate water service and whether DU could lawfully serve if BWS declined or consented. That is not a plausible allegation that the IDB agreed to cause unlawful duplication without BWS's consent.

**C. BWS's Newly Identified "Injury" Is Not Pleaded in Count IV.**

The IDB's Motion also noted that Count IV does not identify any concrete injury. Paragraph 82 merely states that BWS "has been injured as a proximate result of the conspiracy." BWS pleads no lost customer, lost revenue, displaced service, or other injury caused by actual duplication. Its Response now identifies an injury: the more than $600,000 in pressure-related expenditures, engineering and financial consulting costs, and $165,000 tank-site expenditure

alleged in paragraphs 74 through 76. (Doc. 24, PageID. 293.) But Count IV does not incorporate those allegations.

Paragraph 80 incorporates only paragraphs 1 through 13, 21, 23, 24, and 27 through 61. It does not incorporate paragraphs 74 through 76. Those allegations are part of Count III, where BWS pleads that it incurred the expenditures in response to "68 Ventures' agents' Water Pressure Demand" and "in reliance upon the IDB's representation in the WSA" that the IDB would bear certain costs. (Compl. ¶ 75.) BWS cannot use its Response to rewrite Count IV by importing damages allegations it chose not to incorporate into that count.

Even if those allegations were considered, they do not solve the causation problem. As pleaded, those expenditures are costs BWS claims the IDB contractually owes under Paragraph 2 because BWS elected to respond to 68 Ventures' requested pressure requirements. They are not pleaded as damages caused by DU's duplication of service. Indeed, the expenditures were allegedly made so BWS could demonstrate its ability to continue serving Prospect Park—the opposite of an allegation that its service had already been displaced.

Count IV therefore remains deficient both because no actionable underlying wrong has occurred and because BWS has not plausibly pleaded injury proximately caused by the conspiracy alleged in that count.

## III. IF COUNTS I AND II ARE DISMISSED, COUNTS III AND IV SHOULD NOT REMAIN IN FEDERAL COURT.

BWS's response to the IDB's supplemental-jurisdiction argument is entirely conditional on its assertion that Counts I and II survive. (Doc. 24, PageID. 296–297.) It does not dispute the consequences if they do not. If Counts I and II are dismissed for lack of an Article III case or controversy under Rule 12(b)(1), no original federal jurisdiction exists to support supplemental

jurisdiction over Counts III and IV. See 28 U.S.C. § 1367(a); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); *Scarfo v. Ginsberg*, 175 F.3d 957, 962 (11th Cir. 1999).

If the Court instead dismisses Counts I and II under Rule 12(b)(6), § 1367(c)(3) expressly authorizes the Court to decline supplemental jurisdiction over the remaining state-law claims. The Eleventh Circuit repeatedly encourages that result where federal claims are eliminated before trial. *Raney v. Allstate Insurance Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004); *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999); *Baggett v. First National Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997).

This case remains at the pleading stage, and Counts III and IV present exclusively Alabama-law questions. If the federal anchor claims disappear, there is no substantial federal interest in retaining the IDB's contract and conspiracy claims. Accordingly, if Counts I and II are dismissed, Counts III and IV should likewise be dismissed without prejudice.

## IV. ALTERNATIVELY, ANY SURVIVING CLAIM AGAINST THE IDB SHOULD BE STAYED PENDING RESOLUTION OF THE RELATED STATE PROCEEDING.

BWS devotes most of its abstention response to arguing that the state case does not duplicate the federal § 1926(b) claims asserted against the City and DU. (Doc. 24, PageID. 277–281.) That does not fully answer the IDB's narrower alternative request. The IDB recognizes, as it did in its Motion, that the state and federal actions are not identical and that *Colorado River* abstention is an exceptional remedy. But the overlap as to the claims against the IDB is substantial.

The IDB is a plaintiff in the first-filed state action. Both actions concern the same Prospect Park property, the same water-service dispute, and the same course of conduct among BWS, the IDB, the City, and 68 Ventures. Count III's repudiation theory invokes the IDB's participation in the state litigation as purported evidence of renunciation, while Count IV seeks to recharacterize that same participation and related conduct as evidence of an unlawful conspiracy. The state case

was filed first, proceeded through partial summary judgment before this federal action was filed, and remains on appeal before the Alabama Supreme Court. Meanwhile, the claims asserted against the IDB here arise exclusively under Alabama law.

Those circumstances present the same concerns identified in the IDB's opening brief: piecemeal adjudication, potentially inconsistent treatment of the same course of conduct, and unnecessary federal adjudication of state-law issues while the underlying state proceeding remains under appellate review. Accordingly, if either Count III or Count IV survives dismissal and remains within this Court's jurisdiction, the IDB renews its alternative request that the claim be stayed pending final resolution of the related Alabama proceedings.

**CONCLUSION**

For the foregoing reasons and those stated in its Motion to Dismiss, the IDB respectfully requests that the Court:

1. dismiss Count III under Rule 12(b)(6) or, alternatively, dismiss BWS's anticipatory-repudiation and total-breach theories and its request to recover the prospective $6.94 million tank-construction expenditure;
2. dismiss Count IV against the IDB under Rule 12(b)(6);
3. alternatively, if Counts I and II are dismissed and no federal claim remains, dismiss Counts III and IV without prejudice for lack of supplemental jurisdiction or pursuant to 28 U.S.C. § 1367(c)(3); and
4. if any claim against the IDB survives dismissal, stay that claim pending resolution of the related Alabama state-court proceedings.

Respectfully submitted,

*/s/ A. Patrick Dungan*
JAY M. ROSS
jay.ross@arlaw.com
A. PATRICK DUNGAN
patrick.dungan@arlaw.com
*Attorneys for Defendant Industrial Development Board of the City of Daphne*

**OF COUNSEL:**
ADAMS & REESE LLP
Post Office Box 1348
Mobile, Alabama 36633
T: (251) 433-3234

*/s/ Mark L. Redditt**
MARK L. REDDITT
mredditt@maynardnexsen.com
RAYMOND L. BELL, JR.
rbell@maynardnexsen.com
*Attorneys for Defendant Industrial Development Board of the City of Daphne*
**** E-Signature Affixed with Permission***

**OF COUNSEL:**
MAYNARD NEXSEN, P.C.
11 N. Water Street
Suite 24290
Mobile, AL 36602
T: (251) 432-0001

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this the 28th day of October, 2026, electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

*/s/ A. Patrick Dungan*
OF COUNSEL